UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| ESTUARY TRANSIT DISTRICT AND TEAMSTERS 671 HEALTH SERVICE & INSURANCE PLAN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HARTFORD HEALTHCARE CORPORATION, HARTFORD HOSPITAL, HARTFORD HEALTHCARE MEDICAL GROUP, INC., INTEGRATED CARE PARTNERS, LLC,<br><br>Defendants. | Case No.:   3:24-cv-01051 (SFR) |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS RESPONSIVE TO REQUESTS FOR PRODUCTION NOS. 80 AND 81**

**TABLE OF CONTENTS**

I. BACKGROUND ................................................................................................................. 1

II. LEGAL STANDARD ........................................................................................................ 5

III. ARGUMENT ...................................................................................................................... 6

    A. HHC's Settlement Agreement with St. Francis and Any Non-Privileged Communications Related to the Negotiations Thereof Are Relevant to Plaintiffs' Claims. ................................................................................................ 6

    B. There is No Burden or Expense in Producing the Requested Documents .............. 9

IV. CONCLUSION ................................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Berney v. Apple Inc.*,
2021 WL 6334985 (D. Conn. May 27, 2021)................................................................................8

*Bourell v. Ronscavage*,
2023 WL 4145027 (D. Conn. June 23, 2023)...............................................................................9

*Cole v. Towers Perrin Forster & Crosby*,
256 F.R.D. 79 (D. Conn. 2009)................................................................................................6, 8

*Geneva Pharms. Tech. Corp. v. Barr Lab'ys Inc.*,
386 F.3d 485 (2d Cir. 2004).........................................................................................................7

*Gerber Sci. Int'l, Inc. v. Satisloh AG*,
2008 WL 11381479 (D. Conn. Nov. 19, 2008) ...........................................................................8

*Gov't Emps. Ins. Co. v. Cean*,
2020 WL 9812909 (E.D.N.Y. Nov. 12, 2020).............................................................................9

*Levick v. Maimonides Med. Ctr.*,
2011 WL 1673782 (E.D.N.Y. May 3, 2011) ....................................................................6, 9, 10

*Morse/Diesel, Inc. v. Fid. & Deposit Co. of Maryland*,
122 F.R.D. 447 (S.D.N.Y. 1988) ................................................................................................9

*Ohio v. Am. Express Co.*,
585 U.S. 529 (2018).....................................................................................................................7

*Rates Tech. Inc. v. Cablevision Sys. Corp.*,
2006 WL 3050879 (E.D.N.Y. Oct. 20, 2006).............................................................................9

*Tribune Co. v. Purcigliotti*,
1996 WL 337277 (S.D.N.Y. June 19, 1996) ........................................................................8, 10

*Valiante v. VCA Animal Hosps., Inc.*,
2011 WL 219672 (D. Conn. Jan. 20, 2011)................................................................................6

**Other Authorities**

Fed. R. Civ. P. 26........................................................................................................................6

Fed. R. Civ. P. 37........................................................................................................................5

Fed. R. Evid. 408 ........................................................................................................................6

I. **BACKGROUND**

Plaintiffs Estuary Transit District and Teamsters 671 Health Service & Insurance Plan (collectively, "Plaintiffs") respectfully move for an order compelling Defendants Hartford HealthCare Corporation, Hartford Hospital, Hartford HealthCare Medical Group, Inc., and Integrated Care Partners, LLC (collectively, "HHC") to produce documents in response to two requests for the production of documents ("RFPs"), modified and narrowed through the parties' negotiations, regarding the recent settlement between Saint Francis Hospital and Medical Center, Inc. ("St. Francis") and HHC in the related action *Saint Francis Hospital & Medical Center, Inc. v. Hartford HealthCare Corporation et al.* ("*St. Francis*," or the "*St. Francis* Action"), No. 22-cv-00050 (D. Conn.). *See* Declaration of Nathaniel D. Regenold in Support of Plaintiffs' Motion to Compel Production of Documents Responsive to Requests for Production Nos. 80 and 81 ("Regenold Decl.") Ex. 1 (Plaintiffs' Third Set of RFPs).

The *St. Francis* Action is an antitrust lawsuit between HHC and one of its major competitors, St. Francis. Specifically, St. Francis alleged that HHC acquired and exercised market power in the hospital and physician services markets to prevent St. Francis and other competitor providers from competing on a fair plane, thereby allowing HHC to charge supracompetitive prices for lower quality health care to the detriment of competitors, health plans, and patients. *See* Am. Compl. ¶¶ 1-8, 22-23, *St. Francis* Action, No. 22-cv-00050 (D. Conn. Feb. 1, 2022), Dkt. 33 (the "*St. Francis* Amended Complaint"). Additional relevant allegations by St. Francis include:

- HHC acquired or entered into exclusive affiliations with numerous physician practices, including several that had previously associated with HHC's competitors, effectively putting those practices and their patient bases under HHC's control and impeding the ability of St. Francis (and other hospitals) to compete. *See id.* ¶¶ 54-72.

1

- HHC, through its subsidiary Integrated Care Partners ("ICP"), affiliated with numerous independent physicians who "are required to contract through ICP for all contracts" with managed care plans and are effectively coerced by HHC to refer "virtually all their patients" to other HHC physicians to minimize "leakage," further entrenching HHC's dominance of health care services markets and inhibiting its competitors' ability to compete. *Id.* ¶¶ 73, 76, 78.

- HHC "increased its market power, including its ability to maintain and increase unusually high prices for healthcare services." *Id.* ¶ 89.

- HHC leveraged the market power accumulated through these practices to "suppress[] or impede[] innovations in health care that would make it easier for patients to make competitive choices to utilize lower cost providers," including opposing "bundled pricing" that would allow health plans and patients to "know the total cost of care for a procedure, and to make informed decisions"; "interfere[ing] with health plans' utilization of 'tiered' networks" that incentivize insureds to "achieve savings [for themselves and their insurers] by choosing lower cost providers"; and engaging in other conduct that "insulate[s] [HHC] from the price competition that otherwise would be present in an unfettered free market."[1] *Id.* ¶¶ 96-97, 105, 112.

---

[1] Although Judge Nagala dismissed these "anti-tiering" claims for lack of antitrust standing, *see Saint Francis*, No. 22-cv-00050 (D. Conn. Feb. 13, 2023), Dkt. 100 at 28-31, she nevertheless determined that such factual allegations were relevant to St. Francis's antitrust claims against HHC to the extent they were probative of HHC's market power and the purpose and effect of its alleged anticompetitive conduct, *see Saint Francis*, No. 22-cv-00050 (D. Conn. July 31, 2023), Dkt. 179 ("[D]ocuments suggesting that Defendants did not want to participate in tiered networking programs because they believed such programs would dilute their market power, or documents suggesting that Defendants believed they could defeat the market-wide efficacy of such programs

2

- Such misconduct injures health plans and their insureds, among others, by allowing HHC to charge supracompetitive rates for its health care services. *See id.* ¶¶ 172-78, 182-89.

These allegations overlap substantially with Plaintiffs' allegations in this litigation. Plaintiffs here allege that HHC has obtained market power in numerous geographic markets throughout Connecticut in both the inpatient "general acute care services" market and the outpatient services market. *See* Complaint, Dkt. 1 ¶¶ 78-84.[2] Plaintiffs allege that HHC exercises its market power to require health plans "to contract for hospital services on an 'all or nothing' basis" and to include "anti-steering, anti-tiering, and anti-transparency provisions" in their agreements with HHC, preventing health plans from adopting "incentives designed to steer members away from more expensive hospital service providers like HHC and towards more efficient, lower-priced competitors." *Id.* ¶¶ 88-89. As Plaintiffs allege, such conduct allows HHC to "charge supracompetitive prices for lower quality hospital services"; "[s]uppress[] competition and protect[] HHC's market power"; "[l]imit[] the introduction of innovative health plan products"; "[r]educe[] health plans' ability to incentivize patients to choose more cost-effective hospital service providers"; and "[d]epriv[e] patients of the benefits of a competitive market for their purchases of hospital services." *Id.* ¶ 95.

Plaintiffs also allege that HHC, through ICP, controls technically independent physician practices that would otherwise be "a critical form of price competition" in the outpatient services market, "negotiat[ing] reimbursement prices with health plans on behalf of all ICP members." *Id.*

---

by refusing to participate in them, could reasonably lead to evidence supporting Plaintiff's claims that Defendants in fact had and wielded an anticompetitive degree of market power.").

[2] Unless otherwise mentioned, docket citations that do not indicate a case number refer to the docket of this case: *Estuary Transit District v. Hartford HealthCare Corp.*, No. 24-cv-01051 (D. Conn.).

¶¶ 97-100. By engaging in unlawful price fixing, Plaintiffs allege, HHC is able to charge supracompetitive rates for outpatient and physician services from health plans, which then are distributed to the independent physicians that comprise HHC's unlawful cartel. *See id.* ¶¶ 101-02. Plaintiffs further allege that HHC, by exercising control over these purportedly independent physicians through ICP and over other physicians comprising Hartford HealthCare Medical Group ("HHMG"), "foreclose[s] at least 40% of the Outpatient Services market from competing healthcare providers," like St. Francis, "prevent[ing] payers [from] assembling lower-cost provider networks," "prevent[ing] price competition," and enabling HHC to charge supracompetitive prices. *Id.* ¶¶ 103-06.[3]

On January 2, 2025, St. Francis and HHC jointly stipulated to the dismissal of the *Saint Francis* Action, "having reached a mutually acceptable resolution" of the ongoing litigation. *See* Stipulation Regarding Dismissal, *St. Francis*, No. 22-cv-00050 (D. Conn. Jan. 2, 2025), Dkt. 305. Several days later, on January 8, 2025, Plaintiffs served their Third Set of RFPs, requesting:

> **Request for Production No. 80:** Documents sufficient to show the terms of the settlement reached between You and Plaintiff Saint Francis Hospital and Medical Center in the *St. Francis* Action, including but not limited to a copy of the settlement agreement.
>
> **Request for Production No. 81:** All Communications between You or Your counsel and Plaintiff Saint Francis Hospital and Medical Center or its counsel concerning the *St. Francis* Action, including Communications concerning the settlement of the *St. Francis* Action.

---

[3] HHC did not move to dismiss the instant case, instead choosing to file its Answer on August 13, 2024. *See* Dkt. 42.

Regenold Decl. Ex. 1 (Plaintiffs' Third Set of RFPs). After HHC served its responses and objections to Plaintiffs' Third Set of RFPs on February 7, 2025, *see* Regenold Decl. Ex. 2 (HHC's R&Os to Plaintiffs' Third Set of RFPs), the parties met and conferred on February 12, 19, and 24, 2025, in an attempt to narrow the parties' disputes. Plaintiffs further narrowed these two RFPs by requesting that HHC produce (1) the settlement agreement between St. Francis and HHC to resolve the *St. Francis* Action; and (2) all non-privileged communications between St. Francis and HHC related to the negotiation and finalization of the *St. Francis* Action.

During the parties' negotiations, HHC represented that the settlement agreement "does not contain an agreement by HHC to change any alleged conduct that was at issue in the [*St. Francis* Action]" and, **other than one section**, does not contain any "discussion of any claim, defense, facts, evidence, markets, or allegations in the [*St. Francis* Action]." Regenold Decl. Ex. 3 (February 24, 2025 Email from L. Caseria to N. Regenold). Standing on its objections not to produce the settlement agreement and any communications regarding its negotiation and finalization, HHC maintained that the requested documents are irrelevant to Plaintiffs' claims and would be burdensome to produce, relying solely on St. Francis's and HHC's purported shared interest in keeping the settlement agreement and communications related thereto confidential.

## II.   LEGAL STANDARD

"A party seeking discovery may move for an order compelling" production if "a party fails to produce documents or fails to respond that inspection will be permitted—or fails to permit inspection—as requested under [Federal Rule of Civil Procedure] 34." Fed. R. Civ. P. 37(a)(3)(B)(iv). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving

5

the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). For purposes of discovery, relevance is "construed broadly to include 'any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Cole v. Towers Perrin Forster & Crosby*, 256 F.R.D. 79, 80 (D. Conn. 2009) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). Importantly, "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). "Prevailing authority within this Circuit holds that the discovery of settlement-related information is governed by [Federal Rule of Civil Procedure 26(b)], and that no heightened showing of relevance need be made in order to justify the disclosure of a settlement agreement." *Valiante v. VCA Animal Hosps., Inc.*, 2011 WL 219672, at *2 (D. Conn. Jan. 20, 2011).

Although settlement agreements generally are held to be inadmissible at trial, *see* Fed. R. Evid. 408, "a settlement agreement may nonetheless be subject to discovery if it meets the standard of relevance required for discovery," *Levick v. Maimonides Med. Ctr.*, 2011 WL 1673782, at *2 (E.D.N.Y. May 3, 2011). "To be entitled to discovery of a settlement agreement, the party seeking disclosure of the agreement must simply make a minimal showing that its production is likely to lead to the discovery of other relevant evidence." *Id.* at *3.

### III.   ARGUMENT

####    A.   HHC's Settlement Agreement with St. Francis and Any Non-Privileged Communications Related to the Negotiations Thereof Are Relevant to Plaintiffs' Claims.

Although Plaintiffs have not seen the documents at issue, because HHC refuses to produce them, their relevance is self-evident. As detailed above, St. Francis's and Plaintiffs' antitrust cases against HHC overlap substantially, involving similar factual allegations and claims. *See supra* at 1-4. Moreover, the *St. Francis* Action and this case implicate many of the same substantive legal

6

questions that arise in antitrust litigation under the Rule of Reason, including defining relevant antitrust markets, assessing whether HHC has market power, and analyzing whether HHC's alleged misconduct harmed competition. *See, e.g.*, *Geneva Pharms. Tech. Corp. v. Barr Lab'ys Inc.*, 386 F.3d 485, 496 (2d Cir. 2004) ("The goal in defining the relevant market is to identify the market participants and competitive pressures that restrain an individual firm's ability to raise prices or restrict output."); *Ohio v. Am. Express Co.* ("*Amex*"), 585 U.S. 529, 541 (2018) ("The rule of reason requires courts to conduct a fact-specific assessment of market power and market structure to assess the restraint's actual effect on competition. The goal is to distinguish between restraints with anticompetitive effects that are harmful to the consumer and restraints stimulating competition that are in the consumer's best interest." (cleaned up)).[4]

With respect to the settlement agreement itself, although Plaintiffs have not seen it, HHC itself has essentially conceded its relevance. As described above, HHC represented that the settlement agreement "does not contain an agreement by HHC to change any alleged conduct that was at issue in the [*St. Francis* Action]" and, **other than one section**, does not contain any "discussion of any claim, defense, facts, evidence, markets, or allegations in the [*St. Francis* Action]." Regenold Decl. Ex. 3 (February 24, 2025 Email from L. Caseria to N. Regenold). In other words, HHC conceded that one section of the settlement agreement, at the very least, contains a "discussion" of a "claim, defense, facts, evidence, markets or allegations in the [*St. Francis* Action]." *Id.*

Given the overlap in factual and legal issues between the *St. Francis* Action and the instant action, that one paragraph falls within the broad definition of relevance—*i.e.*, "any matter that

---

[4] Plaintiffs maintain that HHC's alleged price fixing nevertheless is unreasonable *per se* because it involves a "horizontal" restraint "imposed by agreement between competitors." *Amex*, 585 U.S. at 540-41 (quoting *Bus. Elecs. Corp. v. Sharp Elecs. Corp.*, 485 U.S. 717, 723 (1988)).

7

bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Cole*, 256 F.R.D. at 80 (internal quotation omitted). And because there is absolutely no burden in producing the settlement agreement—it is a single, recently created document in HHC's possession—it must be turned over its entirety.[5] *See, e.g.*, *Gerber Sci. Int'l, Inc. v. Satisloh AG*, 2008 WL 11381479, at *2 (D. Conn. Nov. 19, 2008) (granting motion to compel settlement material); *Tribune Co. v. Purcigliotti*, 1996 WL 337277, at *2 (S.D.N.Y. June 19, 1996) (ordering production of settlement agreement).

Likewise, non-privileged communications between St. Francis and HHC regarding the negotiation and execution of their settlement are relevant because they may include discussions regarding the strength of St. Francis's evidence and affirmative case against HHC and the weaknesses of HHC's defense. Such communications as well as any negotiation statements or mediation materials may identify inculpatory (or exculpatory) evidence relating to the many overlapping factual allegations and legal issues raised in both the *St. Francis* Action and this litigation, including (1) HHC's accumulation of market power through the acquisition of hospitals and outpatient practices and through its tight control on physician referrals; (2) defining relevant inpatient general acute care services markets and outpatient services markets; (3) HHC's leveraging of its market power in the hospital and outpatient services markets to impede health plans' enactment of cost-saving provisions that would steer patients to lower cost services; and (4) HHC's exclusion of would-be competitors by limiting their ability to construct competitive health

---

[5] Defendant HHC may argue that it should produce the document in redacted form, but it is not permissible to redact for relevance. *See Berney v. Apple Inc.*, 2021 WL 6334985, at *2 (D. Conn. May 27, 2021) ("[T]he weight of authority in the Second Circuit goes against allowing a party to redact information from admittedly responsive and relevant documents based on that party's unilateral determinations of relevancy." (quoting *New Falls Corp. v. Soni*, 2020 WL 2836787, at *14 (E.D.N.Y. May 29, 2020))).

8

care networks that health plans could negotiate with instead of with HHC. *See supra* at 1-4. Any communications between St. Francis and HHC regarding any of these matters could be highly probative of facts and claims Plaintiffs intend to establish in this litigation and thus are relevant and discoverable. *See, e.g.*, *Gov't Emps. Ins. Co. v. Cean*, 2020 WL 9812909, at *2 (E.D.N.Y. Nov. 12, 2020) (denying motion to quash subpoena seeking communications regarding negotiations that led to settlement agreement); *Rates Tech. Inc. v. Cablevision Sys. Corp.*, 2006 WL 3050879, at *3 (E.D.N.Y. Oct. 20, 2006) (affirming discovery order compelling the production of settlement material); *Morse/Diesel, Inc. v. Fid. & Deposit Co. of Maryland*, 122 F.R.D. 447, 451 (S.D.N.Y. 1988) (granting motion to compel settlement materials).

In sum, both St. Francis and HHC's settlement agreement and their communications regarding the negotiation thereof are relevant to Plaintiffs' claims and therefore should be produced. To the extent HHC argues that it has reviewed the requested documents and independently determined they do not contain relevant material, Plaintiffs respectfully submit that "*in camera* inspection is [the only] appropriate way to ascertain whether or not [they] should be produced." *Levick*, 2011 WL 1673782, at *4 (citing *Valiante*, 2011 WL 219672, at *2).

    **B.**    **There is No Burden or Expense in Producing the Requested Documents.**

"A party resisting discovery has the burden of showing 'specifically how, despite the broad and liberal construction afforded the federal discovery rules, each [request] is not relevant or how each [request] is overly broad, burdensome or oppressive, . . . submitting affidavits or offering evidence revealing the nature of the burden.'" *Bourell v. Ronscavage*, 2023 WL 4145027, at *3 (D. Conn. June 23, 2023) (quoting *Vidal v. Metro-N. Commuter R. Co.*, 2013 WL 1310504, at *1 (D. Conn. Mar. 28, 2013)).

There are likely only a handful of documents at issue, and those documents were recently created and easily located and producible. There is no burden associated with producing that small

9

population of documents, and HHC did not identify any such burden during the parties' meet and confers. In fact, the only obstacle HHC cited to the immediate production of the documents was HHC and St. Francis's purported interest in keeping their settlement and negotiations related thereto confidential. But the operative protective order in this case would protect the confidentiality of such materials from public disclosure, *see* Dkt. 80, obviating that concern. Furthermore, "confidentiality provisions in an agreement cannot be used to shield a settlement agreement from discovery." *Levick*, 2011 WL 1673782, at *3 (citing *Griffin v. Mashariki*, 1997 WL 756914, at *2 (S.D.N.Y. Dec. 8, 1997)); *Tribune Co.*, 1996 WL 337277, at *3 ("[T]he mere fact that the settling parties agreed to maintain the confidentiality of their agreement cannot serve to shield it from discovery."). Thus, the only burden identified by HHC to arguably justify withholding the requested documents is illusory and not legally cognizable.

### IV.   CONCLUSION

For the foregoing reasons, the Court should order HHC to produce documents responsive to Plaintiffs' Requests for Production Nos. 80 and 81, particularly the settlement agreement entered into between St. Francis and HHC to resolve the *St. Francis* Action as well as any non-privileged communications between those parties related to the negotiation thereof.

Dated: March 3, 2025                                    Respectfully submitted,

*/s/ Jonathan M. Shapiro*

Jonathan M. Shapiro (ct24075)
**AETON LAW PARTNERS LLP**
311 Centerpoint Drive
Middletown, Connecticut 06475
Telephone: (860) 724-2160
jms@aetonlaw.com

Michael B. Eisenkraft (*pro hac vice*)
Christopher J. Bateman (*pro hac vice*)
Silvie R. Saltzman (*pro hac vice*)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
88 Pine Street, Suite 1400
New York, NY 10005
Telephone: (212) 838-7797
Facsimile: (212) 838-7745
meisenkraft@cohenmilstein.com
cbateman@cohenmilstein.com
ssaltzman@cohenmilstein.com

Brent W. Johnson (*pro hac vice*)
Nathaniel D. Regenold (*pro hac vice*)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave. NW, Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
bjohnson@cohenmilstein.com
nregenold@cohenmilstein.com

Douglas A. Millen (*pro hac vice*)
Michael E. Moskovitz (*pro hac vice*)
Robert J. Wozniak (*pro hac vice*)
Matthew W. Ruan (*pro hac vice*)
**FREED KANNER LONDON & MILLEN LLC**
100 Tri-State International, Suite 128
Lincolnshire, IL 60069
Telephone: (224) 632-4500
dmillen@fklmlaw.com
mmoskovitz@fklmlaw.com

rwozniak@fklmlaw.com
mruan@fklmlaw.com

Daniel J. Walker (*pro hac vice*)
**BERGER MONTAGUE PC**
1001 G Street, NW Suite 400 East
Washington, DC 20001
Telephone: (202) 559-9745
dwalker@bm.net

Eric L. Cramer (*pro hac vice*)
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000
ecramer@bm.net

Hope Brinn *(pro hac vice)*
**BERGER MONTAGUE PC**
505 Montgomery Street, Suite 625
San Francisco, CA 94111
Telephone: (415)-906-0684
hbrinn@bm.net

Frank R. Schirripa (*pro hac vice*)
Scott Jacobsen (*pro hac vice*)
**HACH ROSE SCHIRRIPA & CHEVERIE LLP**
112 Madison Avenue, 10th Floor
New York, NY 10016
Telephone: (212) 213-8311
fschirripa@hrsclaw.com
sjacobsen@hrsclaw.com

*Attorneys for Plaintiffs Estuary Transit District and Teamsters 671 Health Service & Insurance Plan and the Proposed Class*

## CERTIFICATE OF SERVICE

      I hereby certify that on this day, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail on anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

      Dated this 3rd day of March, 2025.

                                                                  */s/ Jonathan M. Shapiro*
                                                                Jonathan M. Shapiro (ct24075)