# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| ESTUARY TRANSIT DISTRICT AND TEAMSTERS 671 HEALTH SERVICE & INSURANCE PLAN, on behalf of themselves and all others similarly situated, | Case No.: 3:24-cv-01051 (SFR) |
| Plaintiffs, | |
| v. | |
| HARTFORD HEALTHCARE CORPORATION, HARTFORD HOSPITAL, HARTFORD HEALTHCARE MEDICAL GROUP, INC., and INTEGRATED CARE PARTNERS, LLC, | March 24, 2025 |
| Defendants. | |

## DEFENDANT HARTFORD HEALTHCARE CORPORATION'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS

Plaintiffs seek to compel Hartford HealthCare Corporation to produce its confidential settlement agreement with Saint Francis Hospital and Medical Center, Inc. in the case *Saint Francis Hospital & Medical Center, Inc. v. Hartford HealthCare Corporation et al.*, No. 22-cv-00050 (D. Conn.), as well as communications between Hartford HealthCare and St. Francis related to the settlement. Hartford HealthCare has already expressly represented to Plaintiffs that, with the exception of a single-paragraph release clause, neither the settlement agreement nor any related communications contain any discussion of any claim, defense, facts, evidence, markets, or allegations in the *St. Francis* case. Caseria Decl. ¶¶ 8, 10. Thus, even assuming that any discussions of facts or claims in the *St. Francis* case would be relevant here, which Hartford HealthCare does not concede, the settlement materials are irrelevant and will not lead to the

discovery of admissible evidence. As a result, they do not meet the standards for discovery established by Federal Rule of Civil Procedure 26(b).

Nonetheless, Plaintiffs' arguments to the contrary are ill-founded. They (1) argue that the settlement agreement is relevant based on an implausible and erroneous interpretation of an email from Hartford HealthCare's counsel to Plaintiffs; and (2) speculate that *any* settlement communications may contain discussions related to various aspects of their case. Curiosity and hope based solely on unsupported conjecture are insufficient to establish relevance under Rule 26(b). And, even if Plaintiffs could demonstrate that the settlement materials had some tangential connection to this case, which they cannot, their interest in obtaining the confidential settlement agreement and related communications is outweighed by the well-established, compelling public interest in maintaining the confidentiality of settlement agreements and communications regarding settlements in order to encourage parties to settle litigation.

Plaintiffs' motion to compel should be denied in its entirety.

## I.     BACKGROUND

St. Francis and Hartford HealthCare settled the *St. Francis* case and subsequently filed a joint stipulation regarding dismissal on January 2, 2025. *See* Stipulation Regarding Dismissal, *St. Francis*, No. 22-cv-00050 (D. Conn. Jan. 2, 2025), Dkt. 305. Six days later, Plaintiffs served their Third Set of RFPs. Regenold Decl. Ex. 1. Hartford HealthCare timely served its responses and objections, stating that the RFPs were irrelevant and not proportional to the needs of the case. Regenold Decl. Ex. 2. The parties subsequently met and conferred. As a result, the parties narrowed the RFPs in dispute to two requests: (1) the settlement agreement between Hartford HealthCare and St. Francis resolving the *St. Francis* case; and (2) nonprivileged communications between Hartford HealthCare and St. Francis related to the negotiation of the settlement agreement in the *St. Francis* litigation. Caseria Decl. ¶ 5.

These facts, captured in Plaintiffs' Memorandum of Law, are true as far as they go, but fail to include important context regarding statements and representations made by both parties during the meeting-and-confer process. During the parties' February 12 meet and confer, Plaintiffs' counsel informed Hartford HealthCare that Plaintiffs believed that the settlement agreement may be relevant primarily for identifying the potential existence of behavioral remedies or substantive discussions of the claims in *St. Francis*. Caseria Decl. ¶ 6. In an attempt to come to an amicable resolution and avoid burdening the Court with unnecessary motions practice, counsel for Hartford HealthCare asked whether, subject to receipt of St Francis' counsel's consent, Plaintiffs would be amenable to Hartford HealthCare producing a version of the settlement agreement with the settlement amount, if any, redacted, but leaving other sections unredacted. Caseria Decl. ¶ 7. On February 19, Plaintiffs' counsel informed Hartford HealthCare's counsel that producing an agreement with any settlement amount redacted would not be an acceptable solution for Plaintiffs,[1] even though a redacted agreement would have provided Plaintiffs with all of the information they professed to seek.[2] Caseria Decl. ¶ 7. Nonetheless, in a further attempt to avoid burdening the Court with a needless motion, on

---

[1] Nowhere in their memorandum do Plaintiffs mention a settlement amount or articulate why it would be relevant and discoverable in this case. Plaintiffs even concede that "settlement agreements generally are held to be inadmissible at trial" under Federal Rule of Evidence 408. *See* Plaintiffs' Memorandum at 6. Because the *St. Francis* settlement agreement, and as a result any settlement amount, is inadmissible at trial under Rule 408 and because the settlement number, on its own, will not lead to the discovery of admissible evidence, Plaintiffs cannot meet their burden to establish the relevance of any settlement amount under Rule 26(b). Instead, Plaintiffs attempt to skirt the issue of relevance by citing *Berney v. Apple Inc.*, 2021 WL 6334985, at *2 (D. Conn. May 27, 2021) for the unremarkable proposition that parties cannot unilaterally redact information from responsive documents based on their own determinations of relevance. Hartford HealthCare has never suggested otherwise. Rather, it has suggested that the parties may be able to resolve their dispute if Hartford HealthCare produced a copy of the settlement with any settlement amount redacted, which is neither prohibited by *Berney* nor, in general, an extraordinary notion atypical of discovery negotiations. And, of course, *Berney* has no bearing on this Court's power to order production of a settlement agreement with the settlement amount redacted.

[2] Plaintiffs' unwillingness to potentially accept a redacted copy of the settlement agreement, omitting only the settlement amount, to the extent there is one, demonstrates that learning any settlement amount is their ultimate aim and that their other justifications are pretextual. Tellingly, Plaintiffs do not address their need for obtaining any settlement amount anywhere in their Memorandum, perhaps cognizant of its utter lack of relevance. Plaintiffs have waived any such arguments and may not now raise them in any reply.

February 24 counsel for Hartford HealthCare sent Plaintiffs' counsel an email, stating in

pertinent part:

> We can confirm that the settlement agreement does not contain an agreement by
> HHC to change any alleged conduct that was at issue in the case. In addition,
> aside from the release in section 1 of the settlement agreement, which refers to the
> claims and allegations in the case, there is no other section of the settlement
> agreement that contains any discussion of any claim, defense, facts, evidence,
> markets, or allegations in the case.[3]

Caseria Decl. ¶ 8; Regenold Decl. Ex. 3. This representation should have fully satisfied

Plaintiffs' stated rationale for obtaining the settlement agreement. Nonetheless, Plaintiffs filed

this motion.

## II.     LEGAL STANDARD

The scope of discovery under Federal Rule of Civil Procedure 26(b) is not limitless.

*United States v. Veeraswamy*, 347 F.R.D. 591, 598 (E.D.N.Y. 2024). Discovery must be both (1)

relevant to the claims and defenses in the case; and (2) proportional to the needs of the case. Fed.

R. Civ. P. 26(b)(1). Further, "proportionality goes 'hand-in-hand' with relevance" and the less

relevant the information, the more likely that discovery will be disproportionate. *Cf. Id.* ("[T]he

more relevant the information sought is, the less likely a Court would find the subject discovery

disproportionate."). Relevance is thus the key inquiry in evaluating whether documents or

information are discoverable under Rule 26. *See Alberty v. Hunter*, 343 F.R.D. 1, 5 (D. Conn.

2022) ("The touchstone of Fed. R. Civ. P. 26(b)(1) is relevance.") (cleaned up). And, while a

document need not ultimately be admissible to be discoverable, it still must be reasonably

calculated to lead to the discovery of admissible evidence. *Yancey v. Hooten*, 180 F.R.D. 203,

207 (D. Conn. 1998) ("Discovery of matter not reasonably calculated to lead to the discovery of

---

[3] During a February 24 meet and confer, Hartford HealthCare's counsel confirmed that this representation regarding
the contents of the settlement agreement applies equally to any communications between Hartford HealthCare and
St. Francis that may exist, and would certainly be willing to place such a representation in writing. Caseria Decl. ¶ _.

admissible evidence is not within the scope of Fed.R.Civ.P. 26(b)(1).") (cleaned up) (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351–52 (1978)).

While it is true that settling parties "cannot shield a settlement agreement from discovery merely because it contains a confidentiality provision, or was filed under seal, discovery of such an agreement is only appropriate if it is itself relevant to the subject matter of the action, or is likely to lead to relevant evidence." *Bradley v. Fontaine Trailer Co. Inc.*, 2007 WL 2028115, at *6 (D. Conn. July 10, 2007) (citing *ABF Cap. Management v. Askin Cap.*, 2000 WL 191698, at *2 (S.D.N.Y. Feb. 10, 2000)). As even the caselaw Plaintiffs cite makes clear, "the right to discovery of a settlement agreement is not absolute. If the required minimal showing of relevance is not made, discovery is not appropriate." *Levick v. Maimonides Med. Ctr.*, 2011 WL 1673782, at *3 (E.D.N.Y. May 3, 2011).

## III.    ARGUMENT

### A.    The Settlement Materials Plaintiffs Seek are Neither Relevant nor likely to Lead to the Discovery of Admissible Evidence

The settlement agreement and related communications Plaintiffs seek are not relevant to this case.[4] However, in an attempt to conjure up some shred of relevance, Plaintiffs mischaracterize a February 24, 2025 email from HHC's counsel during the meet and confer process, including by omitting key context. The full text of Hartford HealthCare's email, in pertinent part, is as follows:

> In addition, aside from the release in section 1 of the settlement agreement, which refers to the claims and allegations in the case, there is no other section of the settlement agreement that contains any discussion of any claim, defense, facts, evidence, markets, or allegations in the case.

---

[4] Plaintiffs devote much of their memorandum to the argument that this case is similar to the *St. Francis* case. While these alleged similarities are simply not relevant to the present dispute for the reasons explained in this Opposition, Plaintiffs dramatically overstate the extent of the overlap between the *St. Francis* case and this case. *St. Francis* and this case involve differently situated plaintiffs who allegedly suffered very different types of harm and, more importantly, many different alleged geographic markets, competitors, providers, practices, and periods of time.

Regenold Decl. Ex. 3. That is, the email merely states that there is, necessarily, a general reference to the claims and allegations in the *St. Francis* case in the section of the settlement releasing Hartford HealthCare from liability for those very claims. Plaintiffs omit that any reference to the claims and allegations in the *St. Francis* case appear solely in the settlement agreement's release of claims, presumably because they realize that, without such a reference, the settlement agreement would not even identify the subject of the settlement. And, critically, Plaintiffs do not assert that any section of the agreement, beyond the release, contains potentially relevant information. However, as Hartford HealthCare has repeatedly and expressly informed Plaintiffs, the remainder of the settlement agreement does not contain any discussion of any claim, defense, facts, evidence, markets, or allegations in *St. Francis* case, much less any information that would lead to the discovery of admissible evidence in this case, which cannot otherwise be inferred from the existence of the settlement itself. Caseria Decl. ¶ 5.

Plaintiffs further speculate that communications between Hartford HealthCare and St. Francis regarding the negotiation and execution of the settlement may contain facts or discussions related to: (1) Hartford HealthCare's alleged accumulation of market power; (2) market definition; (3) Hartford HealthCare's supposed leveraging of its alleged market power to impede health plans from enacting cost-saving provisions; and (4) Hartford HealthCare somehow preventing competitors from constructing competitive health plans. *See* Plaintiffs' Memorandum at 8-9. As counsel for Hartford HealthCare represented to Plaintiffs, and now represents to the Court, they do not. Caseria Decl. ¶¶ 9-10. More specifically, no settlement-related communications between St. Francis and Hartford HealthCare discussing "facts" or allegations related to any of the topics Plaintiffs identified, or any other substantive discussion of any claim, defense, facts, evidence, markets, or allegations in the *St. Francis* case, exist. *Id.* Like

the settlement agreement, any communications that might exist are devoid of any relevant material or references to potentially relevant material and, as a result, would not lead to the discovery of admissible evidence.

Plaintiffs' misinterpretation of Hartford HealthCare's representations regarding the settlement agreement and baseless speculation about the contents of any communications regarding the settlement are nothing more than a mere hope that the settlement materials will contain relevant information or lead to the discovery of admissible evidence. But that is insufficient to meet Plaintiffs' burden under Rule 26. *See In re PE Corp. Sec. Litig.*, 221 F.R.D. 20, 23 (D. Conn. 2003) ("[D]iscovery requests that are based on pure speculation and conjecture are not permissible.") (cleaned up); *see also Huseby, LLC v. Bailey*, 2021 WL 3206776, at *6 (D. Conn. July 29, 2021) ("When a party files a motion to compel, it bears the initial burden to show the relevance of the information it seeks.").

The cases Plaintiffs cite are not to the contrary and, moreover, are readily distinguishable from this case. First, in the *Government Employees* and *Tribune* cases, the settling parties were required to produce settlement materials because the materials could be relevant to a party's bias or interest and could thus be used to impeach a witness at trial. *Gov't Emps. Ins. Co. v. Cean*,, 2020 WL 9812909, at *1-2 (E.D.N.Y. Nov. 12, 2020) (denying a motion to quash the production of settlement materials because a settling defendant agreed to provide "an affidavit supporting plaintiffs' claims against remaining defendants" and the materials sought could be used to impeach the settling defendant at trial); *Tribune Co. v. Purcigliotti*, 1996 WL 337277, at *2 (S.D.N.Y. June 19, 1996) (ordering production of settlement information because it was sought for impeachment and could show that "plaintiffs ... agreed to dismiss [the settling defendant] from the case in exchange for his testimony about certain matters in dispute"). While it is true

that courts sometimes order production of confidential settlement materials where the non-settling party has alleged those materials go to the settling party's bias, interest, or prejudice, Plaintiffs have not made such a claim here and these cases are thus inapplicable.

In the *Levick* and *Morse/Diesel* cases, settlement agreements were found to be relevant because they went to the issue of damages. *Levick,* 2011 WL 1673782, at *3 (ordering *in camera* inspection of a settlement agreement in a similar lawsuit because it may have included compensation for the same damages alleged by plaintiff); *Morse/Diesel, Inc. v. Fid. & Deposit Co. of Maryland*, 122 F.R.D. 447, 451 (S.D.N.Y. 1988) ("These particularized showings demonstrate that the withheld material can reasonably be construed as leading to admissible evidence on the issue of damages caused by the construction delays."). Plaintiffs have made no such argument here and these cases are distinguishable on that basis. Further, the damages sought by a direct competitor (St. Francis) are not comparable to the type of damages sought by Plaintiffs here, nor is the alleged cause of harm here the same as it was in *St. Francis*.

Finally, in *Gerber*, *Rates Tech*, and *Morse/Diesel,* unlike Plaintiffs here, the moving parties actually made the requisite showing of relevance. *Gerber Sci. Int'l, Inc. v. Satisloh AG*, 2008 WL 11381479, at *2 (D. Conn. Nov. 19, 2008) (ordering the production of settlement materials where moving party articulated that it expected to find specific information "about licensing agreements that could lead to relevant evidence about royalties and prior art that could help establish the invalidity of the [p]atent"); *Rates Tech. Inc. v. Cablevision Sys. Corp.*, 2006 WL 3050879, at *1 (E.D.N.Y. Oct. 20, 2006) (compelling the production of purported settlement agreements because plaintiff called the nature of the agreements into question by, at one point, characterizing them as potentially-relevant and discoverable patent licenses); *Morse/Diesel*, 122 F.R.D. at 451 (settlement documents were discoverable where non-settling party was able to

make particularized showings through the use of specific documents and testimony that settlement materials were reasonably calculated to lead to the discovery of admissible evidence). Notably, the settlements in *Rates Tech* and *Gerber* occurred in the context of intellectual property cases where it is common for settling parties to grant licenses of intellectual property, which can be highly relevant to any related litigation, as part of settlement agreements. In any event, these three cases only serve to highlight how deficient Plaintiffs' generalized and speculative assertions of relevance are.

Plaintiffs also cite *Valiante v. VCA Animal Hosps., Inc.*, 2011 WL 219672 (D. Conn. Jan. 20, 2011). But, in *Valiante*, the court did <u>not</u> compel production of a settlement agreement, holding that the "production of the settlement agreement *would not* lead to admissible evidence" because, among other things, "[n]othing in the agreement would provide Defendant with information regarding the Plaintiff's injuries" and "[t]he settlement agreement itself provides no details regarding the injuries the settlement intended to redress." *Id.* at *2 (emphasis added). Such is the case here. As Hartford HealthCare has already represented to Plaintiffs, the *St. Francis* settlement agreement and any related communications, like in *Valiante*, do not contain any information relevant to their case. Caseria Decl. ¶¶ 8, 10.

Plaintiffs have thus made no showing that the settlement materials they seek are relevant or reasonably calculated to lead to the discovery of admissible evidence.

**B.    Production of the Materials Sought by Plaintiffs is not Proportionate to the Needs of the Case**

That the *St. Francis* settlement materials are neither relevant nor likely to lead to the discovery of admissible evidence is alone sufficient to deny Plaintiffs' motion. However, production of the settlement agreement, and any communications between Hartford HealthCare and St. Francis regarding its negotiation, is also not proportionate to the needs of the case. Courts

generally favor voluntary settlement of disputes, and production of confidential settlements can undermine that interest. *See City of Groton v. Connecticut Light & Power Co.,* 84 F.R.D. 420, 423 (D. Conn. 1979)*, aff'd sub nom. City of Groton v. Conn. Light & Power,* 802 F.2d 443 (2d Cir. 1986) (denying motion for production of settlement after weighing "the strong public policy favoring settlement of disputes"); *see also In re Dealer Mgmt. Sys. Antitrust Litig.*, 2019 WL 3884036, at *1 (N.D. Ill. Aug. 16, 2019) (denying motion to compel the production of settlement agreement in an antitrust case while explaining that "[c]ourts generally favor voluntary settlement of disputes in the interest of both public policy and judicial efficiency"); *Bottaro v. Hatton Assocs.*, 96 F.R.D. 158, 160 (E.D.N.Y. 1982) (denying motion to compel the production of a settlement while citing the "the strong public policy of favoring settlements"). And, while Federal Rule of Evidence 408 relates to admissibility and not discoverability, the rationale underlying Rule 408 reflects this greater public interest. *See In re Dealer Mgmt. Sys.,* 2019 WL 3884036, at *1 ("Federal Rule of Evidence 408 prohibits the use of statements made during settlement negotiations to prove liability or the lack of liability at trial for precisely this purpose: to encourage settlements.").

The settlement agreement between Hartford HealthCare and St. Francis is confidential. Caseria Decl. ¶ 3. Plaintiffs have offered only speculative assertions as to the relevance of the settlement materials that amount to nothing more than a baseless desire to see what St. Francis and Hartford HealthCare said in their Settlement Agreement and related communications. If this, or the mere fact that a settlement release describes what has been released, were sufficient to compel production of a confidential settlement, any confidential settlement would be discoverable by any litigant in any litigation involving even superficially similar allegations or subject matter, no matter how tangential. Such a rule goes too far. Plaintiffs' completely

unsubstantiated speculation regarding the relevance of the *St. Francis* settlement materials is ultimately insufficient to override the public's strong interest in encouraging settlements by maintaining their confidentiality. Requiring production of the materials is, therefore, not proportional to the needs of the case.

### C.    In the Event That the Court Orders Production of the Settlement Agreement, Hartford HealthCare Should be Permitted to Redact the Settlement Amount

Hartford HealthCare strongly believes that its settlement agreement with St. Francis should be protected from discovery, as it is irrelevant to the litigation, and strong public policy concerns weigh against production. However, in the event that the Court disagrees and is inclined to require Hartford HealthCare to produce its settlement agreement to Plaintiffs, the Court should permit Hartford HealthCare to redact the settlement amount.

The public policy concerns highlighted above are most profound when production of the settlement amount is at issue. *See, e.g.*, *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 143 (2d Cir. 2004) (emphasizing importance of protecting the confidentiality of settlement amount as a means of encouraging settlement, and criticizing district court for allowing settlement amount to be disclosed). In the context of a series of antitrust actions against a defendant, requiring the defendant to disclose the amount of a settlement with a plaintiff in one of those cases creates a very strong disincentive for the defendant to settle in the first place.

Indeed, the need to avoid discouraging settlements in this matter is precisely why the Second Circuit, other courts, and the Federal Rules of Civil Procedure have all recognized that protecting the confidentiality of settlement discussions—and especially their outcome—is crucial to preserving the incentives for settlement and creating an environment where settlement negotiations can be successful. *See id.; Utica Mut. Ins. Co. v. Fireman's Fund Ins. Co.*, 2013 WL 12143822, no. 6:09-cv-853, *2 (N.D.N.Y. July 2, 2013) (allowing redaction of settlement

amount); *accord MaxLite, Inc. v. ATG Electronics, Inc.*, 2021 WL 12095134, no. 15-1116, *9 (D.N.J. Feb. 17, 2021) (ordering the plaintiff to redact settlement agreements in recognition of the public policy favoring preservation of confidentiality).

## IV.    CONCLUSION

Plaintiffs have failed to establish that the *St. Francis* settlement materials they seek are at all relevant or likely to lead to the discovery of admissible evidence. Their motion to compel should be denied.

Dated: March 24, 2025

**GIBSON, DUNN & CRUTCHER LLP**
Stephen Weissman*
Jamie E. France*
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
(202) 955-8690
sweissman@gibsondunn.com
jfrance@gibsondunn.com

Eric J. Stock*
Joshua J. Obear*
200 Park Avenue
New York, NY 10166-0193
(212) 351-4000
estock@gibsondunn.com
jobear@gibsondunn.com

**SHEPPARD MULLIN RICHTER & HAMPTON LLP**
Thomas J. Dillickrath*
Leo Caseria*
Joseph Antel*
2099 Pennsylvania Avenue, N.W.
Washington, DC 20006-6801
(202) 747-1900
tdillickrath@sheppardmullin.com
lcaseria@sheppardmullin.com
jantel@sheppardmullin.com

*Admitted pro hac vice

/s/ *Karen Staib*

**SHIPMAN & GOODWIN LLP**
Karen T. Staib
Patrick M. Fahey
One Constitution Plaza
Hartford, CT 06103
(860) 251-5000
kstaib@goodwin.com
pfahey@goodwin.com
Juris No. 57385

*Counsel for Defendant*

## <u>CERTIFICATION OF SERVICE</u>

The undersigned hereby certifies that on March 24, 2025, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail on anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ *Karen Staib*
Karen T. Staib