UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Estuary Transit District, et al., | |
| Plaintiffs, | Civil No. 3:24-cv-01051 (SFR) |
| v. | |
| Hartford Healthcare Corp., et al., | June 13, 2025 |
| Defendants. | |

**RULING AND ORDER ON
PLAINTIFFS' MOTION TO COMPEL [ECF No. 97]**

This is an antitrust case brought by a transit district and a union health care plan against Hartford Healthcare Corporation ("HHC") and three related entities. (Compl., ECF No. 1. ¶¶ 8-14.) The defendants recently settled another antitrust case alleging anticompetitive behavior, *St. Francis Hospital and Medical Center v. Hartford Healthcare Corp. et al.*, No. 3:22-cv-00050 (SVN) (the "St. Francis Action"). The plaintiffs in this case requested production of the settlement agreement in the St. Francis Action, along with "all non-privileged communications between St. Francis and HHC related to the negotiation and finalization of" the settlement. (ECF No. 97-1, at 8.) The defendants objected, and after the meet-and-confer process resulted in impasse, the plaintiffs moved to compel. (ECF No. 97.)

For the reasons set forth below, the plaintiffs' motion will be granted in part and denied in part. The defendants will be ordered to produce the settlement agreement, although they will be permitted to redact the amount of any settlement payment. The Court will not order them to produce settlement-related communications at this time.

1

I.  **BACKGROUND**

St. Francis filed its case against HHC on January 11, 2022.  Compl., St. Francis Action (D. Conn. Jan. 11, 2022), ECF No. 1.  In its complaint, it alleged that HHC "[a]cquired numerous physician practices;" "[d]emanded that its acquired (and other) physicians refer all or virtually all their cases to [HHC], regardless of whether that is best for their patients, and penalized physicians who do not do so;" and "[t]hreatened and intimidated physicians who do not follow [HHC's] dictates."  (*Id.* ¶ 3.)  It added that HHC used its relationship with its co-defendant, Integrated Care Partners ("ICP"), to control physician referrals.  (*Id.* ¶¶ 71-75.)  St. Francis asserted that these and other anticompetitive practices constituted violations of the Sherman Act, the Clayton Act, the Connecticut Antitrust Act, and the Connecticut Unfair Trade Practices Act.  (*Id.* at 68-72.)

The plaintiffs filed this case on June 14, 2024.  (Compl., ECF No. 1.)  In their complaint, they alleged that HHC exercises its market power to require health plans "to contract for hospital services on an 'all or nothing' basis" and to include "anti-steering, anti-tiering, and anti-transparency provisions" in their agreements with HHC, preventing them from adopting "incentives designed to steer members away from more expensive hospital service providers like HHC and towards more efficient, lower-priced providers."  (*Id.* ¶¶ 88-89.)  They asserted that HHC "restrains price competition in the Outpatient Services market through ICP" by, among other things, "withholding HHC referrals from physicians who do not join ICP."  (*Id.* ¶¶ 97, 99.)  In the plaintiffs' view, these and other practices allowed HHC to "charge supracompetitive prices for lower quality hospital services"; to suppress competition and protect its market power; to limit the introduction of new health plan products; and to "[d]epriv[e] patients of the benefits of a competitive market for their purchases of hospital services" in violation of the Sherman Act and the Clayton Act.  (*Id.* ¶ 95, pp. 41-50.)

On January 2, 2025, St. Francis stipulated to the dismissal of its case. Stipulation of Dismissal of Case, St. Francis Action (D. Conn. Jan. 2, 2025), ECF No. 305. The stipulation recited that St. Francis had "reached a mutually acceptable resolution" with HHC and the other defendants. (*Id.*) Judge Nagala dismissed the case the next day. Order, St. Francis Action (D. Conn. Jan. 3, 2025), ECF No. 306.

On January 6, 2025, the plaintiffs in this case served requests for production on the defendants, inquiring about the St. Francis settlement. (Pls.' Third Set of Reqs. for Prod., Ex. 1 to Mot. to Compel, ECF No. 97-4.) Specifically, Request No. 80 sought production of "[d]ocuments sufficient to show the terms of the settlement reached between [the defendants] and Plaintiff Saint Francis Hospital and Medical Center in the *St. Francis* Action, including but not limited to a copy of the settlement agreement." (*Id.* at 8.) Request No. 81 sought "[a]ll Communications between [the defendants and their] counsel and Plaintiff Saint Francis Hospital and Medical Center or its counsel concerning the *St. Francis* Action, including Communications concerning the settlement of the *St. Francis* Action." (*Id.*) Request No. 82 inquired after "[a]ll Documents and Communications concerning the *St. Francis* Action." (*Id.*)

The defendants responded on February 7, 2025. (Defs.' Resps. & Objs. To Pls.' Third Set of Reqs. for Prod., Ex. 2 to Mot. to Compel, ECF No. 97-5.) After eighteen pages of "general objections," "objections to certain instructions," and "objections to certain definitions," the defendants objected to Request Nos. 80 and 81 on grounds of irrelevance, undue burden, and lack of proportionality. (*Id.* at 2-19 and 20-22.) They asserted that the "settling parties in the *St. Francis* Action have an expectation of confidentiality concerning the settlement agreement and related Communications, and this confidentiality interest outweighs Plaintiffs' interest in obtaining such materials since they are not relevant to its claims." (*Id.* at 20-21.) They also objected "to the

3

extent" that the two requests sought "information protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege[.]" (*Id.* at 20-22.) Finally, the defendants objected to Request No. 82 as "irrelevant, overbroad, unduly burdensome, and not proportional to the needs of the case." (*Id.* at 22.)

The parties met and conferred on three occasions, and the plaintiffs agreed to narrow their requests. (ECF No. 97-1, at 5.) After these conferences, the plaintiffs sought only "(1) the settlement agreement between St. Francis and HHC to resolve the *St. Francis* Action; and (2) all non-privileged communications between St. Francis and HHC related to the negotiation and finalization of" the settlement. (*Id.*; *see also* Decl. of L. Caseria, ECF No. 99 ¶ 5.) In other words, the plaintiffs essentially dropped Request No. 82 and narrowed Request No. 81 by dropping the demand for production of communications with St. Francis that were unrelated to the settlement, but they maintained Request No. 80's demand for production of the settlement agreement itself. (*See* ECF No. 97-1, at 4-5.)

The parties could not resolve their dispute over Request No. 80. The defendants argued that the St. Francis settlement agreement was irrelevant to this case because, "aside from the release in section 1 . . . which refers to the claims and allegations in the case, there is no other section of the settlement agreement that contains any discussion of any claim, defense, facts, evidence, markets, or allegations in the case." (E-mail from L. Caseria to N. Regenold, Ex. 3 to Mot. to Compel, ECF No. 97-6, at 2.) The plaintiffs countered that the agreement "might be relevant because it may: (1) identify the existence of any behavioral remedies that [HHC] and St. Francis may have agreed upon; or (2) contain substantive discussions of the claims or defenses in the *St. Francis* case." (Decl. of L. Caseria, ECF No. 99 ¶ 6.) The defendants continued to disagree, but they nonetheless offered to explore producing "a copy of the settlement agreement with the

4

settlement amount, if any, redacted.." (*Id.* ¶ 7.)  The plaintiffs apparently declined this proposal, and insisted that the settlement agreement be produced with the settlement amount unredacted. (ECF No. 98, at 3 n.2.)  The defendants believe that this response "demonstrate[d] that learning any settlement amount is [the plaintiffs'] ultimate aim and that their other justifications are pretextual" (*id.*), and the parties reached impasse on Request No. 80.

With respect to the narrowed Request No. 81, the defendants claim that they have no responsive documents to produce.  (*Id.* at 6.)  "More specifically," they say, "no settlement-related communications between St. Francis and [HHC] discussing 'facts' or allegations related to any of the topics Plaintiffs identified, or any other substantive discussion of any claim, defense, facts, evidence, markets, or allegations in the *St. Francis* case, exist." (*Id.*)  The parties reached impasse on this issue as well.  (*See* ECF No. 97.)

The plaintiffs then moved to compel (*id.*), and the presiding District Judge, the Hon. Sarah F. Russell, referred the motion to the undersigned Magistrate Judge.  The defendants filed an opposition memorandum (ECF No. 98), the plaintiffs filed a reply (ECF No. 104), and the Court heard oral argument.  (Minute Entry, ECF No. 105.)  The motion is therefore ripe for decision.

**II.     DISCUSSION**

    **A.     Applicable Legal Principles**

Subject to the proportionality requirement and other limitations set forth in Rule 26, a party may discover relevant, nonprivileged information in the other party's possession.  "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense[.]" Fed. R. Civ P. 26(b)(1). Moreover, information "within [the] scope of discovery need not be admissible in evidence to be discoverable." *Id.*

5

Information is "relevant" if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401; *see also Gaynor v. City of Meriden*, No. 3:17-cv-01103 (CSH), 2019 WL 2537669, at *2 (D. Conn. June 20, 2019) ("While the Federal Rules of Civil Procedure do not define 'relevant,' the operative definition can be found in Rule 401 of the Federal Rules of Evidence[.]"); *In re PE Corp. Secs. Litig.*, 221 F.R.D. 20, 23 (D. Conn. 2003) (employing Rule 401's definition of relevance in addressing discovery dispute under Rule 26). "[T]he determination of whether . . . information is discoverable because it is relevant to the claims or defenses depends on the circumstances of the pending action." Fed. R. Civ. P. 26 advisory committee's notes to 2000 amendments. In part because the concept of relevance is not limited by considerations of evidentiary admissibility at the discovery stage, *see* Fed. R. Civ. P. 26(b)(1), "[i]t is well established that relevance for purpose of discovery is broader in scope than relevance for the purpose of the trial itself." *Vaigasi v. Solow Mgmt. Corp.*, No. 1:11-cv-05088 (RMB) (HBP), 2016 WL 616386, at *11 (S.D.N.Y. Feb. 16, 2016) (quotation marks omitted); *accord Martino v. Nationstar Mortg. LLC*, No. 3:17-cv-01326 (KAD), 2019 WL 2238030, at *1 (D. Conn. May 23, 2019) (observing that, at the discovery stage, relevance is "an extremely broad concept").

This does not mean, however, that the scope of discovery is unlimited. As Judge Merriam has put it, "[t]he broad standard of relevance . . . is not a license for unrestricted discovery." *DiPippa v. Edible Brands, LLC*, No. 3:20-cv-01434 (MPS) (SALM), 2021 WL 2201194, at *3 (D. Conn. June 1, 2021) (quoting *Gucci Am., Inc. v. Guess?, Inc.*, 790 F. Supp. 2d 136, 140 (S.D.N.Y. 2011)). Although it is broad, the Rule 26(b)(1) standard nonetheless "does not allow a party to roam in [the] shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so." *Williams v. City of Hartford*, No.

3:15-cv-00933 (AWT), 2016 WL 3102001, at *2 (D. Conn. June 2, 2016) (quoting *Wells Fargo Bank, N.A. v. Konover*, No. 3:05-cv-01924 (CFD) (WIG), 2009 WL 585430, at *5 (D. Conn. Mar. 4, 2009)).

When a discovery-seeking party moves to compel responses to its requests, it bears the burden to demonstrate that the requests are within the scope of Rule 26(b)(1). As this Court has previously observed, "[t]he burden of demonstrating relevance initially rests with the party seeking discovery." *Doe v. Wesleyan Univ.*, No. 3:19-cv-01519 (JBA) (TOF), 2021 WL 4704852, at *3 (D. Conn. Oct. 8, 2021) (citing *Bagley v. Yale Univ.*, 315 F.R.D. 131, 144 (D. Conn. 2016), *as amended* (June 15, 2016)). "'Once the requesting party has made a *prima facie* showing of relevance,' however, 'it is up to the responding party to justify curtailing discovery.'" *Id.* (quoting *N. Shore-Long Island Jewish Health Sys., Inc. v. MultiPlan, Inc.*, 325 F.R.D. 36, 48 (E.D.N.Y. 2018)). "Put differently, once the moving party shows that the requested information 'bears on, or reasonably could lead to other matter that could bear on, any issue' in the case, 'the party resisting discovery bears the burden of showing why discovery should be denied.'" *Id.* (quoting *Cole v. Towers Perrin Forster & Crosby*, 256 F.R.D. 79, 80 (D. Conn. 2009)) (brackets and ellipsis omitted).

One recognized basis for denying discovery of relevant information is when the discovery is disproportionate to the needs of the case. Under Rule 26, the scope of discovery includes relevant, non-privileged information that is "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). In determining whether a given discovery request meet this standard, the

"analysis focuses on the marginal utility of the requested discovery." *Conn. Mun. Elec. Energy Coop. v. Nat'l Union Fire Ins. Co.*, No. 3:19-cv-00839 (JCH) (RAR), 2020 WL 6074204, at *6 (D. Conn. Oct. 15, 2020). "[E]ven relevant information must be reasonably proportional to the value of the requested information, the needs of the case, and the parties' resources." *Parimal v. Manitex Int'l, Inc.*, No. 3:19-cv-01910 (MPS) (SALM), 2021 WL 1978347, at *5 (D. Conn. May 18, 2021) (quoting *New Falls Corp. v. Soni*, No. 2:16-cv-06805 (ADS) (AKT), 2020 WL 2836787, at *2 (E.D.N.Y. May 29, 2020)).

When a proportionality dispute comes to the Court in the form of a motion to compel, "[e]ach party bears a burden[.]" *Conservation L. Found., Inc. v. All-Star Transp., LLC*, No. 3:21-cv-201 (JBA) (TOF), 2022 WL 16901999, at *2 (D. Conn. Nov. 11, 2022). On the one hand, the discovery-seeking party "should be able to explain the ways in which the underlying information bears on the issues as the party understands them." *Id.* (quoting Fed. R. Civ. P. 26 advisory committee's notes to 2015 amendments) (brackets omitted). On the other hand, the responding party "bears the burden on the 'burden and expense' element of the proportionality analysis." *Id.* (quoting *Huseby, LLC v. Bailey*, No. 3:20-cv-00167 (JBA) (TOF), 2021 WL 3206776, at *8 n.3 (D. Conn. July 29, 2021)).

    **B.**    **Request No. 80**

        *1.*    *Relevance*

As noted above, the parties dispute the relevance of the St. Francis settlement agreement. The plaintiffs' relevance argument is in two parts. (ECF No. 97-1, at 6-8.) First, they contend that the claims of anticompetitive behavior in the St. Francis Action overlap with the claims in this case. (*Id.* at 6.) Second, they note the defendants' concession that the settlement agreement's release article contains a discussion of the claims in the St. Francis Action, and they argue that

"[g]iven the overlap in factual and legal issues between the *St. Francis* Action and the instant action," at least that one paragraph "falls within the broad definition of relevance[.]"  (*Id.* at 7) (citing Ex. 3 to Mot. to Compel, ECF No. 97-6).  The defendants' response to the first argument is largely confined to a footnote, in which they assert that "Plaintiffs dramatically overstate the extent of the overlap between the *St. Francis* case and this case." (ECF No. 98, at 5 n.4.)  They responded to the second argument by stating that the "discussion" in the settlement agreement is merely "a general reference to the claims and allegations in the *St. Francis* case in the section of the settlement releasing [HHC] from liability for those very claims." (*Id.* at 6.)

The Court agrees with the plaintiffs that the St. Francis settlement agreement contains at least some information that is sufficiently relevant to support discovery.  Both the St. Francis case and this case concern allegations that HHC acquired market power for the purpose of extracting supracompetitive prices from the relevant market, and that it used its relationship with ICP to do so.  *Compare* Am. Compl., St. Francis Action (Feb. 1, 2022) ECF No. 33, ¶¶ 6, 73-78, 89, 96-97, *with* (Compl., ECF No. 1, ¶¶ 4, 97-106.)  And the defendants acknowledge that the settlement agreement contains at least some references to, if not a full and substantive "discussion" of, St. Francis's claims.  (Ex. 3 to Mot. to Compel, ECF No. 97-6.)  They say that these references merely identify the claims for purposes of releasing them (ECF No. 98, at 6), and that may be so, but at this stage the plaintiffs are not required to take the defendants' word for it.  A settlement agreement in which a party describes its adversary's claims may be probative of similar claims in another case, at least when one considers that relevance is "an extremely broad concept" during the discovery phase. *Martino*, 2019 WL 2238030, at *1.

The Court disagrees, however, that the amount of any settlement payment is sufficiently relevant to support discovery, even acknowledging the liberal construction given to that concept

9

at this stage. When asked to explain the relevance of the settlement amount at oral argument, the plaintiffs posited a highly contingent and speculative chain of events: they stated that they might call St. Francis employees as witnesses at trial; those employees might testify more favorably to HHC than they were expecting; and the amount of the settlement might then become relevant to the issue of bias, because it might show that the witnesses' testimony was affected by the size of HHC's settlement payment. (*See also* ECF No. 104, at 5-6.) As noted above, however, a discovery-seeking party does not get to "roam in [the] shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so." *Williams*, 2016 WL 3102001, at *2; *see also Ravarino v. Voya Fin., Inc.*, No. 3:21-cv-1658 (OAW) (TOF), 2025 WL 969674, at *9 (D. Conn. Mar. 31, 2025) (same); *Zeitler v. Nationwide Prop. & Cas. Ins. Co.*, No. 3:21-cv-519 (JBA) (TOF), 2022 WL 1125397, at *2 (D. Conn. Apr. 15, 2022) (same). Discovery may properly be denied when the chain of events that would make the information relevant is simply "too attenuated to support" it, *Ravarino*, 2025 WL 969674, at *9, and that is the case with the plaintiffs' theory of the relevance of the settlement amount.

The speculative character of the plaintiffs' theory of relevance distinguishes their case from the others cited in their briefing. They cite two cases in which victims of fraud rings sued multiple individual perpetrators, and then settled with one of them. (ECF No. 97-1, at 7, 9) (citing *Tribune Co. v. Purcigliotti*, No. 93-Civ.-7222 (LHP) (THK), 1996 WL 337277, at *3 (S.D.N.Y. June 19, 1996) and *Gov't Emps. Ins. Co. v. Cean*, No. 19-cv-2363 (PKC) (SMG), 2020 WL 9812909, at *2 (E.D.N.Y. Nov. 12, 2020)). In *Tribune Co.*, the settling defendant had been "a direct participant in the events" that gave rise to the claims against the other defendants, and the court was "persua[ded]" that he "may be an important fact witness" against them at trial. 1996 WL 337277, at *2. It therefore ordered production of his settlement agreement because there had "been a

10

plausible assertion of the need for information to prove bias[.]" *Id.* at *3. In *Government Employees Insurance Co.*, the settling defendant switched sides and "provided an affidavit supporting plaintiffs' claims against remaining defendants[.]" 2020 WL 9812909, at *1. The court ordered production of his settlement agreement and related communications so that the other defendants could see how his affidavit testimony "evolved into its present form." *Id.* at *2. In both cases, the need to explore the witness's bias was much less speculative and remote than it is here.

### 2. *Proportionality*

The parties devoted significant portions of their briefs to a dispute over whether discovery of a settlement agreement requires something beyond simple logical relevance under Rule 401. On the one hand, the plaintiffs argue that a settlement amount is discoverable merely upon a showing of relevance. (ECF No. 97-1, at 6) (citing, *inter alia*, *Levick v. Maimonides Med. Ctr.*, No. 08-Civ.-3814 (NG) (CLP), 2011 WL 1673782, at *2-3 (E.D.N.Y. May 3, 2011) for the proposition that, "[t]o be entitled to discovery of a settlement agreement, the party seeking disclosure of the agreement must simply make a minimal showing that its production is likely to lead to the discovery of other relevant evidence"). They acknowledge that public policy favors encouraging settlement of disputes, but they say that the Federal Rules' "sole means chosen to effectuate that end" is in Federal Rule of Evidence 408's general prohibition on admission of compromise offers at trial, and they urge the Court not to consider this public policy at all in determining the question of discoverability. (ECF No. 104, at 8) (citing *Levick*, 2011 WL 1673782, at *3 and *Morse/Diesel, Inc. v. Fid. & Dep. Co. of Md.*, 122 F.R.D. 447, 449 (S.D.N.Y. 1988)). On the other hand, the defendants direct the Court's attention to cases that have required a

heightened showing of relevance before ordering disclosure of a settlement amount. (ECF No. 98, at 10) (citing, *inter alia*, *Bottaro v. Hatton Assocs.*, 96 F.R.D. 158, 160 (E.D.N.Y. 1982)).

In support of their arguments, both parties rely almost exclusively on cases predating the 2015 amendments to Rule 26. (*See* ECF Nos. 97, 98, 104.) Before 2015, Rule 26(b)(1) included a "provision for discovery of relevant but inadmissible information that appears 'reasonably calculated to lead to the discovery of admissible evidence.'" Fed. R. Civ. P. 26 advisory committee's notes to 2015 amendments. One of the plaintiffs' principal authorities, *Morse/Diesel*, relied heavily on this provision; it held that to accord settlement agreements any protection beyond that provided by Federal Rule of Evidence 408 would be inconsistent with pre-2015 Rule 26(b)(1)'s "broad scope of examination . . . into matters . . . which will lead to the discovery of [admissible] evidence." 122 F.R.D. at 449. Similarly, the *Bottaro* case cited by the defendants likewise relied upon the "reasonably calculated" formulation in reaching its conclusion that something more than simple logical relevance was required. 96 F.R.D. at 159 (quoting the pre-2015 language of Rule 26(b)(1) and concluding that "while admissibility and discoverability are not equivalent, it is clear that the object of the inquiry must have some evidentiary value before an order to compel disclosure of otherwise inadmissible material will issue"). The 2015 amendments removed this formulation, however, and clarified that the scope of discovery is the same for both admissible and inadmissible information. *See* Fed. R. Civ. P. 26 advisory committee's notes to 2015 amendments.

Ten years after those amendments, the discoverability of settlement agreements should be addressed in different terms. The current Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action,

the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Thus, determining the discoverability of a particular piece of non-privileged information is essentially a two-step process, with relevance addressed first and proportionality second. *See Doe*, 2021 WL 4704852, at *3 ("The burden of demonstrating relevance initially rests with the party seeking discovery[,]" and "[o]nce the requesting party has made a *prima facie* showing of relevance . . . it is up to the responding party to justify curtailing discovery." (citations and quotation marks omitted)). There is no basis in the current Rule 26(b)(1) for requiring any sort of "heightened" relevance showing at the first step. The Court therefore agrees with the plaintiffs that, to the extent that authorities like *Bottaro* would apply a sort of "relevance-plus" standard at that step, they are not persuasive under the current rule. But there is likewise no basis for the plaintiffs' claim that the analysis ends at that step. Proportionality must be considered as well.

The plaintiffs conceive of the "burden" element of the proportionality analysis exclusively in terms of numbers of documents. They argue that since "[t]here are likely only a handful of documents at issue, and those documents were recently created and easily located and producible," their request could not be unduly burdensome or disproportionate. (ECF No. 97-1, at 9-10.) The defendants do not dispute that Request No. 80 implicates only a few documents, but they say that the financial cost of producing large numbers of documents is not the only form of burden contemplated by Rule 26(b)(1). They contend that the burden to their confidentiality interests, and to the public interest in promoting settlements by maintaining that confidentiality, are both factors that the Court can and should consider in determining whether discovery of a settlement agreement is proportional to the needs of the case. (ECF No. 98, at 9-11.) They acknowledge that "settling

13

parties 'cannot shield a settlement agreement from discovery merely because it contains a confidentiality provision[.]'" (*Id.* at 4) (quoting *Bradley v. Fontaine Trailer Co., Inc.*, No. 3:06-cv-62 (WWE) (HBF), 2007 WL 2028115, at *6 (D. Conn. July 10, 2007)). But they argue that in this case, the plaintiffs' "unsubstantiated speculation" about the relevance of the settlement materials is outweighed by the defendants' interest in confidentiality and the public's interest in promoting settlements. (ECF No. 98, at 10-11.)

The defendants are correct that courts may consider more than raw document counts in deciding whether a discovery request is unduly burdensome or disproportionate. As Judge Kaplan has explained, the power to limit discovery under Rule 26(b) "may be employed where the burden is not measured in the time or expense required to respond to requested discovery, but lies instead in the adverse consequences of the disclosure of sensitive, albeit unprivileged, material." *Johnson v. Nyack Hosp.*, 169 F.R.D. 550, 562 (S.D.N.Y. 1996); *see also Secs. & Exch. Comm'n v. Collins & Aikman Corp.*, 256 F.R.D. 403, 414 (S.D.N.Y. 2009) (same); *Mitchell v. Fishbein*, 227 F.R.D. 239, 245 (S.D.N.Y. 2005) (same).[1] Put differently, the "nonmonetary costs" of complying with a given discovery request "should be considered," and these "costs" can include "invasion of privacy rights" and "risks to business and legal confidences[.]" *Chen-Oster v. Goldman, Sachs & Co.*, 285 F.R.D. 294, 306 (S.D.N.Y. 2012) (quoting The Sedona Conf., *The Sedona Principles, Second Ed.: Best Practices Recommendations & Principles for Addressing Electronic Document Production*, cmt. 2.b at 17 (2007 Annotated Version)). And "[b]eyond prejudice to the settling parties," there

---

[1] Though the cases cited here pre-date the 2015 amendment to Rule 26, those amendments did not materially change the proportionality factors. The proportionality factors were previously listed in Rule 26(b)(2)(C)(iii), and were moved to Rule 26(b)(1) in 2015. *See* Fed. R. Civ. P. 26 advisory committee's notes to 2015 amendments (noting that the 2015 amendments moved "[t]he considerations that bear on proportionality" from Rule 26(b)(2)(C)(iii) to Rule 26(b)(1) "slightly rearranged and with one addition").

is of course a "strong public policy favoring settlement of disputes." *City of Groton v. Conn. Light & Power Co.*, 84 F.R.D. 420, 423 (D. Conn. 1979). "[P]rotecting the confidentiality of the settlement agreement promotes the important public policy of encouraging settlements." *Hasbrouck v. BankAmerica Hous. Servs.*, 187 F.R.D. 453, 458 (N.D.N.Y. 1999)

Application of those principles to this case reinforces the conclusion that the defendants should produce the St. Francis settlement agreement with the amount of the settlement payment redacted. Disclosure of the settlement amount would burden the defendants' and St. Francis's confidentiality interests – and would likely give the plaintiffs an unfair advantage in any negotiations to settle this case, because the St. Francis settlement amount might be cited as a floor for those negotiations. Moreover, the plaintiffs have not shown how the settlement amount would help resolve any issue in the case, and by extension they have not shown any benefit that would outweigh the burden. *See* Fed. R. Civ. P. 26(b)(1) (instructing courts and litigants to consider "the importance of the discovery in resolving the issues" when evaluating proportionality, and to balance "the burden . . . of the proposed discovery" with "its likely benefit"). Conversely, the defendants have not shown how their confidentiality or other interests would be burdened by disclosure of the references to St. Francis's claims in the release article. Considering both relevance and proportionality, the Court concludes that the defendants should produce the settlement agreement with the payment amount redacted.[2]

---

[2] Citing *Berney v. Apple, Inc.*, No. 3:20-cv-1379 (JAM) (RMS), 2021 WL 6334985, at *2 (D. Conn. May 27, 2021), the plaintiffs argue that "it is not permissible to redact for relevance." (ECF No. 97-1, at 8 n.5.) It is true that "[t]he weight of authority in the Second Circuit goes against allowing a party to redact information from admittedly responsive and relevant documents 'based solely on that party's unilateral determinations of relevancy.'" *Berney*, 2021 WL 6334985, at *2 (quoting *New Falls Corp. v. Soni*, No. CV-16-6805 (ADS) (AKT), 2020 WL 2836787, at *14 (E.D.N.Y. May 29, 2020); *but see Kaiser Aluminum Warrick LLC v. US Magnesium LLC*, No. 22-cv-3105 (JGK) (KHP), 2023 WL 2482933, at *2 (S.D.N.Y. Feb. 27, 2023) (observing that "relevancy redactions can be appropriate in some circumstances[,]" including when "a producing

C.      Request No. 81

As originally formulated, Request No. 81 sought "[a]ll Communications between [the defendants and their] counsel and Plaintiff Saint Francis Hospital and Medical Center or its counsel concerning the *St. Francis* Action, including Communications concerning the settlement of the *St. Francis* Action." (Ex. 1 to Mot. to Compel, ECF No. 97-4.) During the meet-and-confer process, the plaintiffs substantially agreed to drop the portion of the request that inquired after communications that concerned aspects of the St. Francis Action other than settlement. (*See* ECF No. 97-1, at 5; *see also* Decl. of L. Caseria, ECF No. 99 ¶5.) In the memorandum of law that accompanied their motion, the plaintiffs seek an order directing compliance with Request No. 81 as "modified and narrowed through the parties' negotiations" – in other words, "all non-privileged communications between St. Francis and HHC related to the negotiation and finalization of the *St. Francis* Action." (ECF No. 97-1, at 1, 5.)

The defendants asserted twenty pages of "general" and specific objections to the original Request No. 81, including lack of relevance, overbreadth, undue burden, and lack of proportionality. (Ex. 2 to Mot. to Compel, ECF No. 97-5, at 2-19, 21-22.) After asserting these prolix objections, however, the defendants stated that no responsive documents exist. Their opposition memorandum is accompanied by a declaration from their counsel, Leo D. Caseria, stating under penalty of perjury that "[n]o written communications between Hartford HealthCare and St. Francis relating to the negotiation of the settlement agreement involve any discussion of

---

party discusses its desire to make such redactions with its adversary *in advance* of its production and *seeks advance permission from the Court* to make them" (emphasis in original)). But this line of cases addresses only a party's ability to engage in self-help on the issue; it does not address the Court's ability to order redactions for purposes consistent with Rule 26(b). *See, e.g., Conservation L. Found. v. Shell Oil Co.*, No. 3:21-cv-933 (JAM) (TOF), 2023 WL 5434760, at *5-6 (D. Conn. Aug. 22, 2023) (acknowledging the *Berney* principle but nevertheless permitting redactions).

16

or contain any information relating to: (1) the topics Plaintiffs list on pages 8 and 9 of their memorandum; or (2) any substantive discussion of any claim, defense, facts, evidence, markets, or allegations in the *St. Francis* case." (Decl. of L. Caseria, ECF No. 99 ¶ 10.)

When a party makes such a representation in response to a motion to compel, the Court is presented with the question of whether it should nevertheless place that party under an order to produce. "Under ordinary circumstances, a party's good faith averment that the items sought simply do not exist, or are not in his possession, custody, or control, should resolve the issue of failure of production since one 'cannot be required to produce the impossible.'" *Zervos v. S.S. Sam Houston*, 79 F.R.D. 593, 595 (S.D.N.Y. 1978) (quoting *La Chemise Lacoste v. Alligator Co.*, 60 F.R.D. 164, 172 (D. Del. 1973)). This principle has been held not to apply, however, "when the requesting party has a strong reason for disbelieving the responding party's claim to have made a complete production – in other words, a reason backed up by solid evidence rather than mere suspicion." *Lewis v. Doe*, No. 3:19-cv-02015 (JCH) (TOF), 2021 WL 863473, at *5 (D. Conn. Mar. 8, 2021). Where the moving party "cite[s] to specific evidence" challenging a "blanket assertion that no additional documents exist," the responding party may properly be placed under an order to produce. *Id.* at *5 (quoting *Mason Tenders Dist. Council of Greater New York v. Phase Constr. Servs., Inc.*, 318 F.R.D. 28, 43 (S.D.N.Y. 2016)).

In this case, the plaintiffs have come forward with no evidence-backed reason to question the defendants' representation. (*See generally* ECF No. 104) (reply brief explaining the relevance of settlement communications, but containing no evidence of the falsity of the representation). In the Court's own experience, a negotiated settlement of a hotly-contested piece of complex litigation is highly likely to produce at least some written communications discussing the strengths and weaknesses of the parties' claims. But this is "mere suspicion" which does not, on its own,

17

"ordinarily support the entry of discovery orders against the responding party." *This LLC v. HolaBelle, Inc.*, No. 3:23-CV-01579 (SVN), 2024 WL 4871688, at *5 (D. Conn. Nov. 22, 2024).. The plaintiffs' motion will therefore be denied as to Request No. 81, but the denial will be without prejudice to renewal if they develop evidence undermining the representation through other discovery. In the event of such a motion, the plaintiffs may request such sanctions as they believe to be appropriate.

### III. CONCLUSION AND ORDER

The Court has carefully considered all the contentions and authorities raised in the parties' papers and at oral argument, even if not specifically addressed in this opinion. Having considered those arguments and authorities, and for the reasons cited above, the plaintiffs' motion to compel (ECF No. 97) is granted in part and denied in part. The defendants are ordered to comply with Request No. 80 in the plaintiffs' Third Set of Requests for Production, except that they may redact the amount of the settlement payment(s), if any. The defendants shall comply with the request by June 27, 2025. *See* D. Conn. L. Civ. R. 37(d) ("Unless a different time is set by the Court, compliance with discovery ordered by the Court shall be made within fourteen (14) days of the Court's order."). The motion is denied on the current record with respect to Request No. 81, but the denial is without prejudice to renewal on a more developed record as noted above.

This is not a recommended ruling. It is a ruling by a Magistrate Judge on a "nondispositive motion[ ] . . . relating to discovery," D. Conn. L. Civ. R. 72.1(C)(2), and as such it is reviewable pursuant to the "clearly erroneous" statutory standard of review. See 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); D. Conn. L. Civ. R. 72.2(b). It is an order of the Court unless reversed or modified upon timely objection under Local Rule 72.2(a).

So ordered this 13th day of June, 2025, at Hartford, Connecticut.

                                                         */s/ Thomas O. Farrish*
                                                         Hon. Thomas O. Farrish
                                                   United States Magistrate Judge